**Vickie R. NELSON, Plaintiff,**

v.

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, Defendant.**

No. CIV.A.01–2317–DJW.

United States District Court, D. Kansas.

March 7, 2003.

Joan H. Deans, J.H. Deans Law Office, Raytown, MO, for plaintiff.

Melanie D. Caro, David D. Zimmerman, Office of United States Attorney, Kansas City, KS, for defendant.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of Defendant Commissioner of the Social Security Administration (Commissioner)

**1152**

denying her applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, as amended. The parties have filed their consent to jurisdiction by Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1) and Fed.R.Civ.P. 73 (doc. 9). Plaintiff has filed a Motion for Judgment (doc. 5) and Memorandum in Support of Motion for Judgment (doc. 6) seeking judicial review of the Commissioner's decision. The Commissioner has filed a brief in opposition (doc. 7). Plaintiff has also filed a reply brief (doc. 8).

The Court has reviewed the administrative record and the briefs of both parties. As set forth below, the Court reverses the decision of the Commissioner and remands the case to the administrative law judge for further proceedings consistent with this decision.

## I. Standard of Review

Pursuant to 42 U.S.C. § 405(g), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.[1] The Supreme Court has held that "substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner.[3] Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.[4] Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.[5] This determination entails a review of "the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision."[6] Evidence is not considered substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion."[7]

The court also reviews the decision of the Commissioner to determine whether the Commissioner applied the correct legal standards.[8] The Commissioner's failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis.[9] The

1. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994).

2. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

3. *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir.2000) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir.1991)).

4. *Graham v. Sullivan*, 794 F.Supp. 1045, 1047 (D.Kan.1992).

5. *Holloway v. Heckler*, 607 F.Supp. 71, 72 (D.Kan.1985).

6. *Vogt v. Chater*, 958 F.Supp. 537, 538 (D.Kan.1997).

7. *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)).

8. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994).

9. *Glass*, 43 F.3d at 1395 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993)).

court thus reviews the decision of the Commissioner to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied.[10]

## II. Procedural History

Plaintiff filed her applications for disability insurance benefits and supplemental security income benefits on June 23, 1997. (*See* Certified Transcript of the Record at 73–75, 300–301 (doc. 4), hereinafter referred to as Tr.) In both applications, she alleges that she became disabled and unable to work on June 10, 1992. (Tr. 73, 300.) The Commissioner denied the claims initially and upon reconsideration. (Tr. 37–40, 44–49.)

On June 14, 1999, the Administrative Law Judge (ALJ) conducted a hearing on Plaintiff's claim. (Tr. 306–343.) Plaintiff appeared in person with her attorney, Joan H. Deans. (Tr. 308.) Plaintiff offered two additional documents, a letter and a medical assessment form from her treating psychiatrist, Dr. James True, which the ALJ accepted and admitted into evidence. (Tr. 310.)

On June 24, 1999, the ALJ issued his decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to receive disability insurance and supplemental security income benefits. (Tr. 14–29.) In reaching this conclusion, the ALJ determined that while Plaintiff's impairments prevented her from performing her past relevant work as a certified nurse's aide and fast food manager, her impairments did not prevent her from making an adjustment to work that exists in significant numbers in the national economy. (Tr. 29.) The ALJ, therefore, concluded that Plaintiff was not disabled at step five of the Commissioner's five-step sequential evaluation process for determining disability.

On August 25, 1999, Plaintiff requested a review of the hearing decision by the Appeals Council (Tr. 9–10.), which was denied on May 1, 2001. (Tr. 6–7.) Thus, the findings of the ALJ stand as the final decision of the Commissioner in this case.

## III. Factual Summary

At the time of the hearing before the ALJ, Plaintiff was 38 years of age. (Tr. 312.) Under the social security regulations, this is classified as a "younger" individual.[11] Plaintiff completed the tenth grade and later obtained her graduate equivalency degree (GED). (Tr. 313.) Plaintiff also attended business college and received a certified nurses assistant (CNA) certificate. (Tr. 313.) Her past relevant work includes working as a CNA and as a fast food manager. (Tr. 111–13, 313, 341.) Plaintiff alleges she became disabled, unable to work, and eligible for disability insurance benefits on June 10, 1992, after injuring her back while working as a CNA at a nursing home. (Tr. 314.) Plaintiff claims she suffers from lower back and leg pain, asthma, and an adjustment disorder with depression and anxiety along with post traumatic stress disorder.

## IV. The ALJ's Findings

In his decision of June 24, 1999, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on June 10, 1992, the date the claimant stated she became unable to work, and has acquired sufficient quarters of coverage to remain in-

---

10. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir.1992).

11. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 200.00(g).

sured only through September 30, 1997.

2. The claimant has not engaged in substantial gainful activity since June 10, 1992.

3. The medical evidence establishes that the claimant has chronic lumbar strain, asthma, an adjustment disorder with depression and anxiety, and post traumatic stress disorder, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's statements concerning her impairments and their impact on her ability to work are credible only insofar as they preclude her from engaging in work activity exceeding the residual functional capacity set forth below.

5. The claimant retains the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 20–30 minutes at a time for a total of 6 hours of an 8 hour workday, sit for 30–40 minutes at a time for a total of 6 hours of an 8 hour workday. In addition, she is only occasionally able to climb, balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to vibrations and environmental irritants and avoid even moderate exposure to hazardous machinery and unprotected heights. The claimant's mental impairments result in moderate limitations in the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting.

6. The claimant is unable to perform her past relevant work as certified nurse's aide and fast food manager.

7. The claimant is 38 years old, a "younger individual age 18–44."

8. The claimant has a high school education.

9. The claimant has acquired skilled and semi-skilled work experience but has acquired no transferable work skills.

10. Based on an exertional capacity for light work, and the claimant's age, educational background, and work experience, a framework application of Medical Vocational Guideline (Grid Rule) 202.21, Table 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

11. Although the claimant is unable to perform the full range of light work, she is capable of making an adjustment to work which exists in significant numbers in the national economy. Such work includes a full range of unskilled sedentary work and employment as an information clerk. A finding of "not disabled" is therefore reached within the framework of the above-cited rule.

12. The claimant has not been under a "disability" as defined in the Social Security Act, at any relevant time through the date of the decision.

(Tr. 27–29.)

## V. Plaintiff's Challenges to the Commissioner's Decision

Plaintiff challenges the decision of the Commissioner denying her applications for

disability insurance and supplemental security income benefits on several grounds. Plaintiff contends that the Commissioner's decision was not based on substantial evidence on the record as a whole, and contains several errors of fact and law that are grounds for reversal of the decision. Specifically, Plaintiff contends that: (1) the ALJ erred in finding her testimony was not fully credible; (2) the ALJ erred in not giving adequate weight to the opinion of her treating psychiatrist, Dr. True; (3) the ALJ erred in failing to consider the combined effect of all her impairments; and (4) the ALJ erred by failing to include the functional limitation that she "often" experiences deficiencies in concentration, persistence or pace in the hypothetical to the vocational expert. Plaintiff requests reversal with directions to grant her claims for a period of disability commencing June 10, 1992, for disability insurance benefits and for supplemental security income based upon her applications filed June 23, 1997. She urges the Court to reverse the case without remand because the evidence establishes that she is totally disabled under the Social Security Act and a rehearing would serve no purpose but to further delay the awarding of disability benefits.

The Commissioner seeks an order affirming the decision denying Plaintiff disability and supplemental security income benefits. The Commissioner submits that substantial evidence on the record as a whole supports the ALJ's finding that Plaintiff is not disabled. The Commissioner also contends that the ALJ properly considered the credibility of Plaintiff's subjective complaints, gave proper weight to the opinions of all physicians of record, properly considered the combined effect of all impairments, and properly determined that Plaintiff could perform work existing in significant numbers in the national economy.

## VI. Analysis and Discussion

### A. Credibility Determination

■ Plaintiff first contends that the ALJ erred in finding her testimony was not fully credible. She argues that the ALJ's finding that she was not fully credible based on inconsistencies is not supported by the record. She argues that the ALJ was incorrect in finding her statements to be inconsistent with other evidence in the record. The Commissioner submits that the inconsistencies noted by the ALJ are supported by the record.

■ Generally, credibility determinations are the province of the ALJ, who is "the individual optimally positioned to observe and assess witness credibility." [12] Although the court ordinarily defers to the ALJ as trier of fact on credibility, deference is not an absolute rule. [13] Reviewing courts recognize that some claimants exaggerate symptoms for the purposes of obtaining government benefits, and thus deference to the fact-finder's assessment of credibility is the general rule. [14] As credibility determinations are peculiarly within the province of the ALJ, a court will not upset the ALJ's credibility determinations when supported by substantial evidence. [15]

■ While "[c]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence," the ALJ must link his or her credibility finding to substantial evidence. [16] This entails that the ALJ ex-

**12.** *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias,* 933 F.2d at 801).

**13.** *Thompson,* 987 F.2d at 1490 (citations omitted).

**14.** *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir.1987).

**15.** *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995).

**16.** *Id.* (internal citations omitted).

plain why specific evidence led to a conclusion that the claimant's subjective complaints were not credible.[17] These findings as to credibility should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[18]

■ It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."[19] The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[20]

In this case, the ALJ found that Plaintiff's statements concerning her impairments and their impact on her ability to work are credible only insofar as they preclude her from engaging in work activity exceeding her residual functional capacity. (Tr. 28.) He concluded this after setting forth Plaintiff's reported work limitations and the specific limitations he included in his determination of Plaintiff's residual functional capacity (RFC). In his decision, the ALJ stated that Plaintiff reported she is able to stand for 20–30 minutes, sit for 30–40 minutes in a soft chair, walk for half a block, and lift ten pounds. (Tr. 23.) The ALJ also noted that Plaintiff also reported that walking causes shortness of breath due to asthma. (Tr. 23.) In regards to Plaintiff's mental functional limitations, the ALJ reported that Plaintiff noted problems with talking to people, especially men, as well as experi-

encing difficulty concentrating or completing tasks. (Tr. 23) The ALJ also mentioned Plaintiff's reports of crying spells with no specific trigger, bad dreams, and difficulty sleeping. (Tr. 23.)

Comparing the ALJ's description of Plaintiff's testimony of her work limitations with the ALJ's RFC determination, the Court ascertains that the ALJ found Plaintiff's testimony not credible regarding her claimed 10–pound lifting limitation, inability to walk due to shortness of breath, and her mental impairments being more than a moderate work limitation. The Court, therefore, finds that the ALJ set forth a sufficiently specific discussion of the weight he gave to Plaintiff's statements regarding her work limitations. The Court is thus able to determine which portions of Plaintiff's testimony he found not credible. Although the ALJ makes the seemingly conclusory statement that Plaintiff's statements concerning her impairments and their impact on her ability to work are credible only insofar as they preclude her from engaging in work activity exceeding the residual functional capacity determination, the Court can determine which limitations the ALJ found not credible by comparing the ALJ's discussion of Plaintiff's reported work limitations with the RFC determination.

The ALJ further provided specific reasons for his finding that some of Plaintiff's claimed work limitations not credible. The ALJ identified the following inconsistencies in the record that caused him to question Plaintiff's credibility:

> [Plaintiff] testified that she takes her medications as prescribed; however the record indicates that the claimant has

**17.** *Id.*

**18.** *Id.* (quoting *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted)).

**19.** Social Security Ruling (SSR) 96–7p, 1996 WL 362209, at *34484.

**20.** *Id.*

repeatedly attempted to obtain addictive medications such as Xanax and Valium from Dr. True and Percocet and other narcotics from the Adult Services Clinic. Progress notes from Dr. True indicate that [Plaintiff] was all but preoccupied with obtaining Valium and Xanax and reported on several occasions that she took more than what was prescribed or that she "lost" her medications. In addition, she reported in November 1998 that she had been taking a friend's Vicodin for the last year. The claimant testified that she had a drinking problem in 1990; however, treatment notes from Swope Parkway indicate that [Plaintiff] reported in May 1997 that she was drinking a fifth of gin per day. In addition, although the claimant has denied the use of illegal drugs, she was seen in the emergency room of [Truman Medical Center] after smoking cocaine in October 1994. There is an indication that [Plaintiff] exhibits symptom magnification in order to procure benzodiazepines and other addictive medications. Records from Dr. Steelman indicate that [Plaintiff] has a history of symptom magnification.

(Tr. 23–24.)

The ALJ also found that Plaintiff's poor earning record called into question her motivation to work. The ALJ noted that Plaintiff's relatively low lifetime earnings and her receipt of state aid and food stamps could act as a disincentive to her returning to work. (Tr. 24.)

The ALJ also noted that Plaintiff's reported shortness of breath and inability to walk far due to asthma is inconsistent with her continuing to smoke cigarettes. He found it inconsistent that an individual experiencing significant breathing restrictions would continue to smoke cigarettes and engage in behaviors which had adverse effects on her health. (Tr. 24.)

The ALJ also found that Plaintiff's allegations of the presence of such mental limitations, which cause the claimant such distress cannot be as prevalent as she claims because she has failed to seek ongoing and continuous psychotherapy for an impairment that causes such severe limitations and restrictions on her ability to function on a daily basis. (Tr. 24.) In addition, the ALJ questioned the effect of Plaintiff's continuing substance and alcohol abuse on the efficacy of her medications. (Tr. 24.)

Plaintiff argues that the ALJ improperly found portions of her testimony not credible based upon what he perceived to be inconsistencies between her testimony and the record. Plaintiff claims that the ALJ was incorrect in finding these statements to be inconsistent with other evidence in the record. Specifically, Plaintiff takes issue with the ALJ's statements regarding her use of prescription medications, drinking problems, illegal drug use, and poor work record. The Court has reviewed the record and finds that substantial evidence in the record supports the ALJ's finding that portions of Plaintiff's testimony were inconsistent with other evidence in the record. Because the ALJ provided specific reasons for his credibility determination and substantial evidence in the record supports those reasons, the Court defers to the ALJ's credibility determination. Unlike the reviewing Court, the ALJ was able to directly observe and assess Plaintiff's credibility at the hearing. Plaintiff's attempts to convince the Court that her testimony was in fact consistent by identifying evidence consistent with her statements are not persuasive.

Based upon the Court's review of the ALJ's credibility determination and the record, the Court determines that the ALJ appropriately and adequately explained with specific evidence his conclusion that

Plaintiff's statements concerning her impairments and their impact on her ability to work are credible only insofar as they preclude her from engaging in work activity exceeding her residual functional capacity. Furthermore, the Court finds that substantial evidence in the record supports the ALJ's findings as to Plaintiff's testimony regarding her limitations and the reasons why he found some of those reported limitations not credible.

### B. Treating Psychiatrist

■ Plaintiff next contends that the ALJ erred in not giving adequate weight to the opinion of her treating psychiatrist, Dr. James True. Specifically, she references a letter written by Dr. True, dated March 11, 1999, in which he states that Plaintiff is presently unable to work due to emotional problems and this condition will last indefinitely. She also argues that the ALJ did not give controlling weight to Dr. True's ratings of her ability to do work-related activities, as set forth in his June 3, 1999 Medical Assessment of Ability to do Work–Related Activities (Mental) form. The Commissioner argues that the ALJ gave proper weight to the opinions of all of the physicians of record.

■ A treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions.[21] An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the rec-

ord.[22] Although the ALJ may disregard the opinion of a treating physician if it is conclusory and unsupported by medical evidence, the ALJ must articulate "specific, legitimate reasons" for doing so.[23] A treating physician may also proffer an opinion that a claimant is totally disabled.[24] The treating physician's opinion that claimant is disabled is not dispositive, however, because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner.[25]

### 1. Dr. True's letter opining that Plaintiff is unable to work

Plaintiff's medical records include a handwritten letter, dated March 11, 1999, signed by Dr. True that states the following: "I treat Ms. Nelson. At present due to emotional problems she is unable to work. This condition will last indefinitely." (Tr. 296.)

The Court construes this letter to be Dr. True proffering his opinion that Plaintiff is totally disabled. It is well established that a treating physician's opinion that claimant is disabled is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Commissioner.[26] Thus, the Court finds no error in the ALJ's decision to not give controlling weight to Dr. True's opinion that Plaintiff is unable to work for an indefinite period of time, as he expressed in the March 11, 1999 letter.

### 2. Dr. True's medical assessment form

■ Plaintiff also argues that the ALJ did not give controlling weight to Dr.

---

**21.** *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir.2002); 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

**22.** *Castellano,* 26 F.3d at 1029; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

**23.** *Frey,* 816 F.2d at 513.

**24.** *Castellano,* 26 F.3d at 1029.

**25.** *Id.;* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

**26.** *Id.;* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

True's ratings of her ability to do work-related activities, as set forth in Dr. True's June 3, 1999 Medical Assessment of Ability to do Work–Related Activities (Mental) form. The Medical Assessment form used by Dr. True utilizes a continuum to rate various occupational skills. The continuum ranges from "unlimited/very good" to "good" to "fair" to "poor or none." "Fair" is defined by the Medical Assessment Form as the "ability to function in this area is seriously limited, but not precluded." "Poor to none" is defined as "no useful ability to function in this area." Dr. True's continuum marks for Plaintiff's abilities to relate to co-workers, deal with the public, deal with work stresses, and maintain attention/concentration are between "fair" and "poor to none." (Tr. 297–98.) He rated her ability to understand, remember and carry out simple, detailed, and complex job instructions as "fair." He also rated her ability to demonstrate reliability and interact with supervisors as "fair." (Tr. 297–98.)

In *Cruse*, the Tenth Circuit recognized that the evaluation tools used to complete the PRT form do not match those used on the medical assessment forms completed by consulting health care professionals and stated that the definition of "fair" as found on the medical assessment form is misleading.[27] The court held that the definition of "fair" as "seriously limited but not precluded" is the same as the listing requirements' definition of the term "marked," which would indicate a limitation which is "more than moderate, but less than extreme."[28] The court further concluded that a rating of "fair," as defined on the

medical assessment form, is evidence of disability.[29]

The ALJ did not give Dr. True's ratings controlling weight in his decision. Instead, the ALJ indicated on the Psychiatric Review Technique (PRT) form appended to his decision that Plaintiff only had "moderate" restrictions in her ability to maintain social functioning. (Tr. 32.) The ALJ also found that Plaintiff "often"[30] experiences deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner. (Tr. 32.) These restrictions do not correspond to Dr. True's ratings on his Medical Assessment form.

Furthermore, at the hearing, the vocational expert noted that Dr. True's Medical Assessment form was different than the Mental Residual Functional Capacity Assessment form referenced by the ALJ. Upon cross-examination by Plaintiff's attorney, the vocational expert admitted that if the ALJ's hypothetical included the functional limitations in Dr. True's Medical Assessment Form, then, according to the definitions provided on Dr. True's form, all work would be precluded. (Tr. 342.)

In his decision, the ALJ discussed Dr. True's ratings of Plaintiff's functional restrictions contained in the June 3, 1999 Medical Assessment form. (Tr. 25.) The ALJ noted that Dr. True was a treating source and his opinion is entitled to controlling weight if well supported by medically-accepted clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. (Tr. 25.) The ALJ, however, noted that "Dr. True sees [Plaintiff] once per

**27.** *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 618 (10th Cir. 1995).

**28.** *Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 12.00(C)).

**29.** *Id.*

**30.** The PRT form contains 5 classifications of the degree of limitation for deficiencies of concentration, persistence or pace: Never, Seldom, Often, Frequent, and Constant.

month for medication checks. He has not prescribed ongoing individual or group therapy to help [Plaintiff] deal with any of the issues causing what he perceives as severe functional limitations. In addition, nearly every progress statement by Dr. True ... makes mention of [Plaintiff's] overuse of medication, repeated attempts to obtain more or different medications, and her need to decrease the amount she takes." (Tr. 25–26.) The ALJ then found the harsh functional restrictions in Dr. True's medical assessment form were not supported by objective medical findings and, thus, were not entitled to controlling weight. (Tr. 26.) The ALJ based his finding upon Dr. True's own treatment notes and the report by Dr. Morrison, the psychiatrist who performed a consultative evaluation of Plaintiff. (Tr. 26.)

Plaintiff argues that the ALJ should give controlling weight to Dr. True's assessments of her functional restrictions because the medical findings of Drs. Morrison and Ratnam support those of Dr. True. She also points out that the ALJ gave controlling weight to some portions of Dr. True's notes, specifically those portions mentioning her requests for additional medication. Plaintiff claims that the ALJ has no reason to disbelieve the content of Dr. True's letter and medical assessment and that substantial evidence supports Dr. True's opinion.

▆▆▆▆ A treating physician's opinion is entitled to extra weight because he or she is usually more familiar with a claimant's medical condition than other physicians.[31] When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around.[32] The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled.[33] In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion.[34] The ALJ must consider the following specific factors to determine what weight to give any medical opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[35] While the ALJ is authorized to make a final decision concerning disability, they cannot interpose their own medical expertise over that of a physician, especially when that physician is the regular treating doctor for the disability applicant.[36]

In this case, the ALJ articulated specific reasons for not giving controlling weight to Dr. True's ratings of Plaintiff's functional

**31.** *Kemp v. Bowen,* 816 F.2d 1469, 1476 (10th Cir.1987).

**32.** *Goatcher v. United States Dept. of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995).

**33.** *Frey,* 816 F.2d at 513.

**34.** *McGoffin,* 288 F.3d at 1252.

**35.** *Goatcher,* 52 F.3d at 290.

**36.** *Kemp,* 816 F.2d at 1476.

abilities. The Court, however, finds the reasons articulated by the ALJ are not legitimate reasons for disregarding the severity of the limitations as indicated by Dr. True on the Medical Assessment form.

The ALJ states that he rejects Dr. True's ratings of Plaintiff's ability to do work-related activities because (1) Dr. True has not prescribed ongoing individual or group therapy to help Plaintiff deal with any of the issues causing what Dr. True perceives as severe functional limitations; and (2) Dr. True's progress notes make extensive references to Plaintiff's overuse of medications; repeated attempts to obtain more or different medications, and Dr. True's attempts to get Plaintiff to decrease her medications. The ALJ also indicates that Dr. True's treatment notes and the report by Dr. Morrison do not support the harsh functional restrictions contained in Dr. True's Medical Assessment form.

The ALJ's first reason for not giving controlling weight to Plaintiff's treating psychiatrist, Dr. True, is that Dr. True has not prescribed ongoing individual or group therapy to help Plaintiff deal with her functional limitations. The Court determines that this is not a valid reason for rejecting a treating source opinion. Dr. True's failure to prescribe what the ALJ thinks would be the appropriate medical treatment for Plaintiff does not lessen the validity of Dr. True's assessment of Plaintiff's functional limitations. It is not appropriate for the ALJ to use his own personal medical opinion as a basis for discrediting Plaintiff's treating psychiatrist. The ALJ's determination that Dr. True's ratings should be rejected because he failed to prescribe group or individual therapy is therefore not a legitimate reason for rejecting Dr. True's ratings of Plaintiff's ability to do work-related activities.

The second reason the ALJ cites for rejecting the functional limitations of Dr. True is that Dr. True's own progress notes make extensive references to Plaintiff's overuse of medications, repeated attempts to obtain more or different medications, and Dr. True's attempts to get Plaintiff to decrease her medication. The Court is unclear how Dr. True's references to Plaintiff's attempts to get addictive medications justifies the ALJ's decision to reject Dr. True's assessment of her abilities to do work-related activities. The fact that Dr. True recognizes Plaintiff's drug-seeking behavior and has documented it in his medical records tends to support his assessments of her ability to deal with work stresses, relate to co-workers, and deal with the public, all categories that Dr. True indicated in the "fair" to "poor or none" range on the medical assessment form. (Tr. 297.) Thus, the Court finds that, contrary to the ALJ's finding, Dr. True's treatment notes tend to support his ratings on the Medical Assessment form.

The ALJ also references Dr. Morrison's report as not supporting Dr. True's ratings. On August 28, 1997, J. Scott Morrison, M.D., a psychiatrist, performed a consultative evaluation of Plaintiff. (Tr. 223–24.) In Dr. Morrison's report to Disability Determination, he diagnosed her with adjustment disorder with depression and anxiety and indicated the following findings from his mental status examination:

> The patient is a plump, neatly dressed and groomed woman who appears about her stated age of 38. She is pleasant and cooperative. She is oriented to time, place, person, and situation. She seems to be of low average intelligence. Attention and concentration are somewhat diminished by her level of anxiety; and this improves as we continue. She is somewhat depressed; tears come to her eyes when talking about her childhood rapes. She denies suicidal thinking. She says she is very irritable but this is not noted in the examination.

There is no evidence of thought disorder, hallucinations or delusions. Insight is only fair. Judgment is fair. There is no bizarre or peculiar behavior. She relates fairly appropriately with the examiner, seeming a bit shy at first. (Tr. 224.) Dr. Morrison also reported in his comments that he did not believe that Plaintiff has any organic cause for her problem with memory, but rather felt she has occasional decreased concentration due to anxiety. He further noted that she does not appear to have major depression but certainly she is situationally depressed. (Tr. 224.)

While Dr. Morrison's findings as to Plaintiff's mental limitations are not as restrictive as Dr. True's assessments, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around.[37] Dr. Morrison saw Plaintiff one time for a consultative evaluation. Interestingly, Dr. Morrison notes in his letter that he received no records of Plaintiff's psychiatric care with Dr. True at Swope Parkway Mental Center. While Dr. Morrison's evaluation of Plaintiff's limitations are less harsh than those by Dr. True, this, by itself, is not sufficient reason for the ALJ to reject Dr. True's ratings of Plaintiff's ability to do work-related activities. Dr. True has acted as Plaintiff's treating psychiatrist and has seen her nearly every month for two years prior to the date of his Medical Assessment. The ALJ's rejection of Dr. True's ratings of Plaintiff's ability to do work-related activities based upon a single consultative visit with a psychiatrist who did not have her treating psychiatrist's records is not a legitimate reason for rejecting Dr. True's opinion.

As the ALJ noted in his decision, he may properly disregard the opinion of a treating physician if he articulates "specific, legitimate reasons" for disregarding the opinion. While the ALJ articulated specific reasons in this case, those reasons are not legitimate reasons for rejecting Dr. True's ratings of Plaintiff's ability to do work-related activities. Thus, the ALJ erred in failing to give controlling weight to Dr. True's ratings of Plaintiff's ability to do work-related activities, as set forth in his June 3, 1999 Medical Assessment form.

For these reasons, the Court will reverse with directions to remand to the case back to the Commissioner of further proceedings. Upon remand, the Commissioner shall re-evaluate the medical opinion expressed by Plaintiff's treating psychiatrist, Dr. True, in his June 3, 1999 Medical Assessment form in accordance with this opinion.

## C. Combined Effect of All Impairments

■ Next, Plaintiff contends that the ALJ erred by failing to analyze how her impairments contributed to one another and how the combined effects of all her problems limited her ability to work. She claims that the ALJ's opinion focuses much discussion on her mental impairments but fails to adequately address her lower back and neck pain and reveals no substantive discussion of the combined effects of these impairments. In response, the Commissioner contends that the ALJ's residual functional capacity determination took into account both Plaintiff's physical and mental limitations. And while the ALJ's decision focused more on Plaintiff's mental complaints, this was due to the minimal number of times Plaintiff sought treatment for physical symptoms and her release to light exertional work as early as July 1992 with no subsequent attempts for treatment of back pain for five years, or until October 1997.

---

**37.** *Goatcher,* 52 F.3d at 290.

The Commissioner is required to evaluate the combined impact of a claimant's impairments throughout the disability determination process.[38] Unless the Commissioner considers all of a claimant's impairments, singly and in combination, the decision is not supported by substantial evidence.[39] Plaintiff correctly asserts that an ALJ does not satisfy the 42 U.S.C. § 423(d)(2)(C) requirement simply by recognizing the requirement and indicating that he considered the claimant's impairments in combination. Rather, the ALJ's decision must be supported by substantial evidence.[40] In this case, the Court finds that substantial evidence exists to show that the ALJ considered her impairments in combination. The ALJ set forth a hypothetical to the vocational expert that included limitations specifically directed to her low back and neck pain. The ALJ's inclusion of lifting and carrying restrictions to 20 pounds occasionally and 10 pounds frequently, limiting standing and walking to 20–30 minutes at a time for a total of six hours, and limiting her sitting tolerance to 30–40 minutes at a time for a total of 6 hours of an 8–hour day are all indicative of the ALJ's consideration of Plaintiff's lower back and neck pain. Furthermore, the ALJ restricted Plaintiff's climbing, balancing, stooping, kneeling, crouching, and crawling to only occasionally. These also tend to show that the ALJ included Plaintiff's physical impairments along with her mental impairments in his decision. The ALJ therefore did not err by failing to analyze how her physical and mental impairments contributed to one another and how the combined effects of all her problems limited her ability to work.

## D. Vocational Expert's Testimony

Plaintiff also contends that the ALJ's hypothetical question presented to the vocational expert did not contain the functional limitation that she "often" experiences deficiencies of concentration, persistence or pace.

In his decision, the ALJ rated the degree of Plaintiff's functional loss resulting from the documented mental impairment. He found that the evidence shows that Plaintiff is slightly limited in regard to performing daily activities; has moderate difficulties in maintaining social functioning; no more than "often" experiences deficiencies in concentration, persistence or pace; and has not experienced any episodes of decompensation at work or in a work-like environment due to a mental impairment. (Tr. 21.) The ALJ also indicated in the Psychiatric Review Technique Form appended to his decision that the Plaintiff "often" experiences deficiencies in concentration, persistence or pace. (Tr. 28, 32.)

In his hypothetical posed to the vocational expert, however, the ALJ stated that the hypothetical claimant's ability to maintain attention and concentration for extended periods was a "moderate" limitation. At the hearing, the ALJ posed the following hypothetical to the vocational expert:

[A]ssume that we have a person between the ages of 31 and 39, that this person completed a tenth grade and subsequently got a GED and also that this person has been certified as a CNA and has indeed worked in that field.... As-

**38.** *Williams v. Bowen,* 844 F.2d 748, 757 n. 5 (10th Cir.1988) (citing 42 U.S.C. § 423(d)(2)(C)).

**39.** *Hawkins v. Heckler,* 600 F.Supp. 832, 837 (D.Kan.1985).

**40.** *Talbot v. Heckler,* 814 F.2d 1456, 1461 (10th Cir.1987).

sume that we have a person who can occasionally lift 20 pounds and frequently lift ten pounds, can be on their feet about six hours in an eight hour day, can be seated about six hours in an eight hour day, can never climb [a] ladder, rope or scaffold, that the other posturals, climbing, balancing, stooping, kneeling, crouching or crawling can only be performed on an occasional basis and should avoid concentrated exposure to vibration and fumes, odors, dust, gases, et. cetera, and should avoid even moderate exposure to hazards from machinery and heights. In addition to that, I'd like you to factor in ... this person would also— is moderately limited in the ability to work in coordination with or proximity to others without being distracted by them and number 12, the ability to interact appropriately with the general public. She's also moderately limited and also in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

    \*      \*      \*      \*      \*      \*

Okay. Now, I'm going to give you— I'm going to amend the RFC. I'm going to keep the physical one the same and add on to the psychological one that *a moderate limitation in* number three, the ability to understand and remember detailed instructions, number five, carrying out detailed instructions and number six, *the ability to maintain attention and concentration for extended periods.* That would give a total of seven moderates and, if I added those to the other ones, how does that impact your answer?

(Tr. 336–38) (emphasis added).

The vocational expert responded that Plaintiff's past work as a CNA and fast

food manager would be precluded. (Tr. 338.) The vocational expert also stated that the semiskilled occupations would be eliminated, being at SVP four and "that would be with regard to a moderate limitation at number six [the ability to maintain attention and concentration for extended periods]." (Tr. 338.)

Plaintiff contends that the vocational expert's testimony is defective in that it responded to a hypothetical that did not fully set forth all of Plaintiff's impairments. She contends that ALJ's inclusion of only a "moderate" limitation on her ability to maintain attention and concentration for extended periods rather than the PRT form limitation that she "often" experiences deficiencies of concentration, persistence or pace in his hypothetical question constitutes reversible error. She argues that the case should be remanded to obtain vocational testimony to determine if "moderate" and "often" are equivalent and the impact of "often" experiencing deficiencies of concentration, persistence or pace on the available job base.

      ▆▆▆ "[T]estimony elicited by hypothetical questions that do not relate with precision all of claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision."[41] While this standard is clear, little guidance exists for determining the level of precision required to satisfy this standard. In an unpublished decision, the Tenth Circuit has found that an ALJ's failure to include his finding that plaintiff "would often have deficiencies of concentration" in the hypothetical to the vocational expert was not sufficiently precise to constitute substantial evidence.[42] The court found that the ALJ should have solicited additional testimony from the vocational expert as to

---

**41.** *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991) (quotations omitted).

**42.** *Zeff v. Shalala,* 45 F.3d 441 (Table), No. 94–5076, slip op. at *1 (10th Cir. Dec. 29, 1994).

whether and how the concentration deficiencies the ALJ found would affect plaintiff's ability to perform the jobs identified by the vocational expert.[43] The court noted that some level of concentration was necessary to perform all the jobs identified by the vocational expert and without the additional explanatory testimony, the vocational expert's statement that plaintiff could work despite her impairments did not constitute substantial evidence upon which the ALJ could rely.[44]

In this case, the ALJ included a "moderate" limitation on Plaintiff's ability to maintain attention and concentration for extended periods. He, however, failed to include his PRT form limitation that Plaintiff "often" experiences deficiencies of concentration, persistence or pace. The Court determines that the ALJ did not relate with sufficient precision Plaintiff's mental impairments so as to constitute substantial evidence to support his decision that Plaintiff is capable of making an adjustment to work that exists in significant numbers in the national economy. The Court is unable to determine whether the vocational expert would have found the ALJ's use of the word "moderate" to describe Plaintiff's ability to maintain attention and concentration for extended periods to be equivalent to the ALJ's finding that the Plaintiff "often" has deficiencies of concentration, persistence or pace. The lay definition of "often" as defined as "frequently occurring"[45] is sufficiently different from "moderate," as "not severe in effect; not seriously or permanently disabling or incapacitating,"[46] for the Court to seriously question whether the vocational expert's response should constitute substantial evidence to support the Commissioner's decision.

In addition to the apparent discrepancy between "moderate" and "often" in describing Plaintiff's concentration abilities, the ALJ's characterization of Plaintiff's ability to maintain attention and concentration for extended periods as "moderate" is more of a *qualitative* assessment whereas the frequency, i.e., "often," which she experiences deficiencies of concentration, persistence or pace is more of a *quantitative* assessment. The Court is not able to determine whether the vocational expert's response to the hypothetical would have remained the same if the ALJ had included the limitation that Plaintiff "often" experiences deficiencies of concentration, persistence or pace in the hypothetical. The Court must therefore reverse the decision of the Commissioner and remand this case back for further proceedings. Upon remand, the ALJ shall ensure that any hypothetical question to a vocational expert shall relate with precision all of Plaintiff's impairments.

## VII. Conclusion

Based upon the reasons set forth above, the Court reverses the Commissioner's decision denying Plaintiff benefits and remands this action to the Commissioner to conduct further proceedings. On remand, the Commissioner shall re-evaluate the medical opinion of Plaintiff's treating psychiatrist, Dr. True, in accordance with this opinion. In addition, the ALJ shall ensure that any hypothetical question to a vocational expert shall relate with precision all of Plaintiff's impairments.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner denying Plaintiff benefits is reversed and the case is remanded pursuant to sentence four of

43. *Id.*

44. *Id.*

45. Webster's Third New International Dictionary 1568 (3d ed.1993).

46. *Id.* at 1451.

42 U.S.C. § 405(g) for further proceedings consistent with this opinion. Such decision will dispose of this case, including Plaintiff's Complaint (doc. 1), which has been considered a petition for review.

IT IS SO ORDERED.