**Heidi DELLINGER, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. 02–4118–SAC.**

United States District Court, D. Kansas.

Dec. 3, 2003.

---

Sharon J. Meyers, Kansas City, MO, for Plaintiff.

Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This is an action to review the final decision of the defendant Commissioner of Social Security ("Commissioner") denying the claimant Heidi

Dellinger's applications for disability insurance benefits under Title II of the Social Security Act ("Act") and for supplemental security income ("SSI") under Title XVI of the Act. The case is ripe for decision on the parties' briefs.[1]

## PROCEDURAL HISTORY

Claimant applied for disability benefits and SSI on June 10, 1997, asserting she had been disabled as of January 1, 1996. Her claims were denied initially and on reconsideration. At the claimant's request, a hearing before an administrative law judge ("ALJ") was held on December 2, 1998, and she appeared in person and with counsel. (Tr. 27–62). Witnesses at the hearing were the claimant, the claimant's roommate, and a vocational expert. The ALJ subsequently issued his decision on April 29, 1999, finding that the claimant was not disabled as defined under the Social Security Act. The Appeals Council denied the claimant's request for review after also considering a brief submitted by the claimant's attorney. Thus, the ALJ's decision stands as the commissioner's final decision. *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994).

## STANDARD OF REVIEW

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is more than a scintilla and is that evidence

---

1. The court treats the plaintiff's motion for summary judgment and supporting memoran- dum as her brief filed pursuant to D.Kan. Rule 83.7(d).

which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989). "A finding of ' "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." ' " *Trimiar v. Sullivan*, 966 F.2d 1326, 1328 (10th Cir.1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir.1973))). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d at 858 (citation omitted).

The court's duty to assess whether substantial evidence exists:

"is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.' "

*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir.1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir.1985)). The court "must examine the record closely to determine whether substantial evidence supports" the commissioner's determination. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996). The court is not to reweigh the evidence or substitute its judgment for the commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The court typically defers to the ALJ on issues of witness credibility. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir.1992). Nonetheless, " '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence ....' " *Winfrey*, 92 F.3d at 1020 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133

(10th Cir.1988)). The courts do not mechanically accept the commissioner's findings. *Claassen v. Heckler*, 600 F.Supp. 1507, 1509 (D.Kan.1985); *see Ehrhart v. Secretary of Health & Human Services*, 969 F.2d 534, 538 (7th Cir.1992) ("By the same token, we must do more than merely rubber stamp the decisions of the" commissioner. (citation omitted)). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the commissioner's conclusions are rational. *Holloway v. Heckler*, 607 F.Supp. 71, 72 (D.Kan.1985). " 'We examine the record as a whole, including whatever in the record fairly detracts from the weight of the ... [commissioner's] decision and, on that basis determine if the substantiality of the evidence test has been met.' " *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (quoting *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800–01 (10th Cir.1991)); *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The record must "demonstrate that the ALJ considered all of the evidence," through "discussing the evidence supporting his decision, ... the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–1010 (10th Cir.1996).

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than 65 years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir.1991). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

 A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). If the claimant bears her burden of proof on the first four steps, she establishes a prima facie case of disability. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988). The burden of proof then shifts to the commissioner at step five to show that the claimant retains the residual functional capacity ("RFC") to perform other work available in the national economy, considering such additional factors as age, education, and past work experience. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989). The commissioner satisfies this burden if substantial evidence supports it. *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993). A vocational expert's testimony may provide a proper basis for an ALJ's determination at step five only when a claimant's impairments are adequately reflected in the hypotheticals posed to the expert. *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991).

## ALJ'S FINDINGS

In his order of April 29, 1999, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on January 1, 1996, the date the claimant stated she became unable to work, and has acquired sufficient quarters of coverage to remain insured through at least June 20, 2001.

2. The claimant has not engaged in substantial gainful activity since January 1, 1996.

3. The medical evidence establishes that the claimant has fibromyalgia and lumbar strain, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's statements and testimony, and that of her friend, concerning her impairments and their impact on her ability to work are not credible, for the reasons stated in the body of this decision.

5. As a result of her impairments, the claimant has the following residual functional capacity: She cannot lift more than 20 pounds frequently or 10 pounds occasionally. She cannot stand and/or walk more than 30 minutes at a time, or more than 2 hours total in an 8–hour workday. She cannot frequently climb, bend, stoop, squat, crouch, crawl, or kneel. She cannot engage in work activity without having the opportunity to alternative sitting and standing at will.

6. The claimant is unable to perform her past relevant work as a shipping and receiving manager, certified nurses' aide assistant, or a return checker.

7. The claimant is 30 years old, a "younger individual."

8. The claimant has at least a high school education.

9. The claimant has semi-skilled work experience.

10. There are a significant number of jobs in the national economy which the claimant can perform, given her vocational profile and above-described residual functional capacity. Examples of such jobs are bench assembler, parking lot cashier, and photocopy machine operator. This finding is based on the testimony of the vocational expert.

11. The claimant has not been under a "disability," as defined in the Social Se-

curity Act, at any relevant time through the date of this decision.

(Tr. 25–26).

## SUMMARY OF ARGUMENTS

The claimant argues that the ALJ failed to make adequate credibility findings on her pain testimony, that her testimony was corroborated by objective evidence, and that the reasons given for rejecting her testimony ignored the requirements of *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). The claimant next contends that the ALJ erred in rejecting the opinion of her treating physician, Dr. Erickson, as expressed in the Fibromyalgia RFC Questionnaire completed on November 4, 1998. Finally, because the ALJ's hypothetical question did not relate all of the claimant's impairments, the vocational expert's testimony is not substantial evidence.

## CREDIBILITY FINDING ON SUBJECTIVE PAIN TESTIMONY

At the hearing, the claimant testified that since January of 1996 she has experienced "a burning sensation" that goes up her back and down her legs along with weakness in her legs. (Tr. 41). "My back feels like there's a car that sits on it all the time where I can't move, bend, sit, stand for long periods of time, or even sleep throughout the night." (Tr. 41). Her difficulty with sleeping began five or six years ago and was described as an inability to sleep on her back or her sides and waking when she turns over "to make sure my body all turns at the same time because when my back starts twisting and stuff like that, then it starts shooting pains up to my head, down my feet, and then become really weak, and sore, and where I can't take much medicine, so I just take Tylenol, and that doesn't work most of the time when I do that." (Tr. 41–42). The claimant testified that the pain in her legs and back caused headaches, nausea and diarrhea. When asked about numbness, the claimant said her body felt like it was "asleep where I can't even move my legs. My hands go numb where I can't even hold a cup or even a pencil or anything like that because it goes through my whole fingers." (Tr. 43–44). The claimant also testified to stiffness, muscle spasms, soreness, and fatigue. The "pressure gets so bad in the back where it starts shooting up to my hand, and I can't take it any longer, and I have to lay down." (Tr. 45–46). She described this need to lie down as occurring as much as three or four times a day.

The claimant said her daily activities were quite restricted by her pain and weakness. In a typical day, she wakes early, showers, eats breakfast, and then lies down. She handles some household chores like cooking, shopping and laundry, on an intermittent basis with periods of rest during and after the activity depending on the level of exertion and pain experienced. Because of the difficulty with sitting for extended periods, she is unable to attend church services or enjoy doing crafts.

The claimant's roommate, Barbara Wood, testified about the claimant's painfully tender back condition, difficulty in sleeping, and extremely fatigued state after working a single day on a temporary job. Ms. Wood described the claimant as motivated to work but unable to deal with the weakness, pain and exhaustion caused by working.

"Generally, credibility determinations are the province of the ALJ, 'the individual optimally positioned to observe and assess witness credibility.'" *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Secretary of Health & Human Servs.*, 933 F.2d at 801). Indeed, reviewing courts recognize "that some claimants exaggerate symptoms for purposes of obtaining government benefits, and defer-

ence to the fact-finder's assessment of credibility is the general rule." *Frey v. Bowen,* 816 F.2d 508, 517 (10th Cir.1987). Even so, "deference is not an absolute rule," *Thompson v. Sullivan,* 987 F.2d at 1490 (citations omitted), as the courts still require credibility determinations to be "supported by substantial evidence." *Bean v. Chater,* 77 F.3d 1210, 1213 (10th Cir.1995).

" 'To establish disabling pain without explicit confirmation of treating physicians may be difficult. Nonetheless, the claimant is entitled to have his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence. An ALJ may not ignore the evidence and make no findings.' " *Kepler v. Chater,* 68 F.3d 387, 390 (10th Cir.1995) (quoting *Huston v. Bowen,* 838 F.2d at 1131 (citations omitted)). Where there is evidence of allegedly disabling pain, courts in the Tenth Circuit look to *Luna v. Bowen,* 834 F.2d 161 (10th Cir.1987), for the framework of proper analysis:

> "We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling."

*Kepler v. Chater,* 68 F.3d at 390 (quoting *Glass v. Shalala,* 43 F.3d at 1395). If objective medical evidence shows a pain-producing impairment, the ALJ then must consider the claimant's allegations of severe pain and decide whether he believes them. *Thompson v. Sullivan,* 987 F.2d at 1489. Some of the factors to be considered at this point include:

> "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony and objective medical evidence."

*Kepler,* 68 F.3d at 391 (quoting *Thompson,* 987 F.2d at 1489).

The ALJ must link his credibility findings to substantial evidence, that is, the ALJ needs to "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible." *Kepler,* 68 F.3d at 391. "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d at 1133 (footnote omitted). The "ALJ 'must articulate specific reasons for questioning the claimant's credibility' where subjective pain testimony is critical." *Kepler,* 68 F.3d at 391 (quoting *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir.1992)).

In evaluating claimant's testimony in this case, the ALJ observed that the claimant's impairments "could reasonably be expected to produce some of the symptoms alleged, but the claimant's complaints suggest a greater severity of impairment than can be shown by the objective medical evidence alone." (Tr. 19). Indeed, the ALJ found no indicators in the medical record like, "muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption," consistent with the intensity and persistence of disabling pain to which the plaintiff testified. (Tr. 22). Recognizing that his decision could not be based solely on the medical evidence, the ALJ identified some of the other factors

relevant in his consideration, including: work history, observations of the claimant's pain made by physicians and third parties, precipitating or aggravating circumstances, medication and its effectiveness, other medical treatment, functional restrictions, and daily activities. The ALJ addressed each factor in his decision and supported the same with substantial evidence of record. While he did not refer specifically to the *Luna* factors in his decision, the ALJ did discuss the evidence relevant to those factors. Contrary to the plaintiff's argument, the ALJ did not ignore *Luna* and discount the credibility of the plaintiff and her roommate solely on a lack of supporting objective medical evidence.

■■ The ALJ described the claimant's work history as poor with minimal earnings and frequent changes both before and after the alleged onset of disability. Such evidence can indicate a disincentive to work. *See Nelson v. Commissioner of Social Security Admin.*, 252 F.Supp.2d 1148, 1157 (D.Kan.2003). The ALJ correctly identified some discrepancies in the plaintiff's testimony concerning her described physical limitations and her daily activities that admittedly were more strenuous because of her second floor apartment. Such activities included shopping, carrying groceries, climbing stairs repeatedly, and doing laundry. The ALJ noted the sweeping and overwhelming terms used by the plaintiff in relating the frequency and intensity of her pain. The ALJ questioned the credibility of such testimony in light of the claimant's lack of persistence in seeking medical treatment for her condition. The plaintiff testified to taking pain medication that was not strong, and the record indicated the plaintiff was not compliant in using the pre-

scribed stronger pain medication. Minimal or conservative medical treatment may evince a pain that is not disabling. *Wiley v. Chater*, 967 F.Supp. 446, 451 (D.Kan.1997). As far as any alleged side effects from the medication being a cause for the claimant's limited use, the ALJ noted that the medical records did not reference any complaints about side effects. From these circumstances, the ALJ was entitled to infer that the plaintiff's pain was "not as limiting or disabling as alleged." (Tr. 21–22). For that matter, nor has the plaintiff's pain been a sufficient motive for her to follow her physician's advice of dieting and losing weight to find some relief from circumstances aggravating her pain.

The ALJ opined that the claimant's demeanor and behavior at the hearing appeared orchestrated and motivated to qualify for benefits. For additional support, the ALJ referred to the medical records from January of 1995, in which a treating physician observed nothing unusual and recommended to the claimant "that she think of herself as a healthy person" and that her muscular aches and pains "were explained through everyday life." (Tr. 190). The medical records reflect that the claimant was a patient of this treating physician, Dr. John Ingram, from January 1995 through November of 1996.[2] The ALJ also cited Dr. Lehman's letter of November 19, 1997, to Dr. Lee, in which it was noted that claimant during the initial examination had "appeared quite animated, using her arms very well" and had used the same overwhelming phrase to describe her back pain, "as if 'a car is sitting on it.'" (Tr. 187). The ALJ drew the inference from the claimant's frequent changes in physicians and comments to them that she was "shopping for a sup-

---

**2.** In addition, the progress notes of Dr. Lee from a visit in October of 1997 contain an impression that the claimant overreacts to back pain. (Tr. 183).

portive diagnosis" for disability benefits. (Tr. 22). The medical records reflect that the claimant had complained that prior physicians had thought she "was faking," (Tr. 187). Finally, the ALJ seriously questioned the claimant's credibility after inconsistencies in her testimony were revealed when she was pressed to reveal the extent of her daily physical activities.

The ALJ expressly considered the testimony of the claimant's roommate, Ms. Wood, who opined about the plaintiff's motivation to work and offered general observations about the plaintiff having a tender back, difficulty in sleeping, and fatigue after working. (Tr. 21). The ALJ was critical of Ms. Wood's testimony as not providing useful details about the claimant's capability, as being based on what the claimant had told her, and as being given possibly in an effort to assist the claimant in obtaining benefits. Moreover, the ALJ correctly observed that Ms. Wood's testimony is not to be treated as objective medical proof of disability.

As shown above, the ALJ provided specific reasons for his credibility determination on the testimony of the claimant and Ms. Wood about the severity of the claimant's impairments. Those reasons complement the framework set forth in *Luna* and are not inconsistent with the case law regarding credibility determinations. The ALJ also affirmatively linked substantial evidence to his credibility findings. The record does not afford any cogent reason for discounting the ALJ's firsthand observation and assessment of the claimant's credibility. That the plaintiff's testimony may be consistent with certain other evidence of record is not a persuasive basis for overturning the ALJ's credibility findings.

**OPINION OF DR. ERICKSON**

On the Fibromyalgia RFC Questionnaire completed in November of 1998, Dr.

Neal Erickson indicated that his first contact with the claimant was on May 1, 1997, and that he had seen her infrequently. Other than this questionnaire, the only notes and files of record from Dr. Erickson are his initial impression notes from two visits on May 1 and 2, 1997, and a MRI report that showed no focal intracranial abnormalities sent to Dr. Erickson on May 5, 1997. The ALJ summarized in detail the findings expressed on the questionnaire before concluding:

> This opinion and residual functional capacity assessment by Dr. Erickson is accorded no weight for the following reasons: It is wholly unsupported by any objective medical, clinical, radiological or laboratory findings or results from this physician; rather, it appears to be based only on claimant's subjective complaints. Moreover, it is totally inconsistent with the objective medical evidence and clinical findings of record noted above, which establish that claimant has few if any objectively documented signs or symptoms of serious physical impairments; examinations throughout the period in question have almost universally revealed full or near full ranges of motion throughout, no motor or sensory losses, little or no difficulty with orthopedic maneuvers, and no radiological or laboratory documentation of serious abnormalities.

(Tr. 18–19).

 "Generally, the ALJ must give controlling weight to a treating physician's well supported opinion about the nature and severity of a Claimant's impairments." *Adams v. Chater,* 93 F.3d at 714; *see Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994) (The opinion is entitled to controlling weight "if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial

evidence in the record."). "The [Commissioner] must give substantial weight to the evidence and opinion of the Claimant's treating physician, unless good cause is shown for rejecting it. If an ALJ rejects the opinion of a treating physician, he or she must articulate specific, legitimate reasons for doing so." *Washington v. Shalala,* 37 F.3d 1437, 1440 (10th Cir.1994) (citation and quotations omitted); *see Ward v. Apfel,* 65 F.Supp.2d 1208, 1215 (D.Kan. 1999). A treating physician's opinion may be rejected if his conclusions are not supported by specific findings, *Castellano,* 26 F.3d at 1029 (citing in part 20 C.F.R. § 404.1527(d)), or by clinical and/or laboratory diagnostic techniques; if they are inconsistent with other substantial evidence in the record, *Castellano,* 26 F.3d at 1027; or if they are brief, conclusory, and unsupported by medical evidence," *Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir.1987). A treating physician's opinion that a patient is disabled is not dispositive, because the disability determination rests ultimately with Commissioner. *Castellano,* 26 F.3d at 1029.

■ The court finds that the ALJ articulated specific and legitimate reasons for rejecting Dr. Erickson's assessment and according no weight to his opinion. The ALJ correctly observed that the assessment was not supported by clinical, medical, radiological or laboratory diagnostic findings or by Dr. Erickson's own records from his infrequent treatment (two visits) of the claimant. The ALJ referred to medical evidence of record regarding range of motion, sensory loss, and orthopedic movements that directly contradicted Dr. Erickson's assessment. Indeed, the ALJ cannot be faulted for concluding that Dr. Erickson's assessment appeared to be based on only the claimant's subjective complaints. The ALJ certainly is entitled to question Dr. Erickson's credibility and

assessment when it was rendered more than eighteen months after any recorded visit with the patient, when the physician admits to infrequent treatment, and when the medical records show only a brief treatment relationship with no course of treatment being developed or used. Thus, the court finds substantial evidence supporting the ALJ's decision to reject Dr. Erickson's assessment.

## VOCATIONAL EXPERT'S TESTIMONY

■ The claimant contends the ALJ's hypothetical question of the vocational expert failed to relate all of her impairments as otherwise described on Dr. Erickson's assessment. The ALJ is required to accept and include in his hypothetical questions only those limitations supported by substantial evidence of record. *Shepherd v. Apfel,* 184 F.3d 1196, 1203 (10th Cir. 1999) ("claimant's testimony ..., by itself, is insufficient to establish the existence of an impairment" for inclusion in a hypothetical). In deciding which limitations to include in a question, the ALJ is not bound to include those not accepted as true. *Wiley v. Chater,* 967 F.Supp. at 452. Consequently, the ALJ may limit the impairments to those supported by substantial evidence in the record. *Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir.1993). Any opinions premised on assumed limitations unsupported by substantial evidence will not bind the ALJ. *Id.*

The ALJ properly included in his hypothetical question only those limitations he found to be credible from the evidence of record. Having discounted the credibility of the plaintiff's pain complaints and rejected the assessment of Dr. Erickson, the ALJ was not compelled to include any of those restrictions in his question. The court is satisfied that the ALJ did not err in limiting his hypothetical to those find-

ings that are supported by substantial evidence.

## CONCLUSION

After carefully reviewing the entire record, the parties' arguments and the relevant law, the court concludes that the commissioner's decision is supported by substantial evidence on the whole record and comports with the relevant legal standards.

IT IS THEREFORE ORDERED that the decision of the commissioner is affirmed.