Patsy L. BILLUPS, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. 03–4106–JAR.

United States District Court, D. Kansas.

June 24, 2004.

Steven M. Tilton, Tilton & Tilton, CHTD, Topeka, KS, for Plaintiff.

Jackie A. Rapstine, Office of United States Attorney, Topeka, KS, for Defendant.

### MEMORANDUM & ORDER

ROBINSON, District Judge.

Plaintiff Patsy L. Billups brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner of Social Security's denial of her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. According to plaintiff, defendant failed to properly assess plaintiff's credibility and failed to properly establish plaintiff's residual functional capacity. As explained in more detail below, the Court concludes that the decision, in part, is not based on substantial evidence and/or on an incorrect appli-

cation of the law, and therefore the Court reverses and remands this case.

## I. Procedural Background

On February 13, 1998, plaintiff filed her application for a period of disability and disability insurance benefits. Plaintiff is insured for disability benefits through December 31, 1996, so she must establish disability on or prior to that date in order to be entitled to Title II benefits. On plaintiff's application she claimed disability since January 1, 1994, due to severe arthritis and curvature of the spine with degenerative disc disease. The application was denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge (ALJ) held a hearing on September 28, 1998, at which both plaintiff and her non-attorney representative were present. On October 8, 1998, the ALJ rendered a decision denying all benefits on the basis that plaintiff was not under a "disability" as defined by the Social Security Act. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council; her request for review was denied on September 22, 2000.

Plaintiff appealed the final decision to this court, after which defendant filed a Motion to Remand under sentence four of 42 U.S.C. § 405(g) for a determination of whether plaintiff could perform work that existed in significant numbers in the national economy at step five of the sequential evaluation process. The court granted the motion, and after remand, the ALJ[1] held a hearing on September 12, 2001, at which both plaintiff and her non-attorney representative were present. The ALJ then held a supplemental hearing on October 26, 2001, to hear testimony from a Vocational Expert (VE). On November 28, 2001, the ALJ rendered a decision again denying all benefits on the basis that plaintiff was not under a "disability" as defined by the Social Security Act. After this unfavorable decision, plaintiff requested review by the Appeals Council; her request for review was denied on April 21, 2003. Thus, the ALJ's decision is the final decision of defendant.

## II. Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether defendant's decision is supported by substantial evidence in the record as a whole and whether defendant applied the correct legal standards.[2] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of defendant.[4]

## III. Relevant Framework for Analyzing Claim of Disability and the ALJ's Findings

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ...."[5] The Social Security Act further provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering

---

1. On remand, a different ALJ heard and determined the claim.

2. *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir.2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994)).

3. *Id.* (quoting *Castellano*, 26 F.3d at 1028).

4. *Id.*

5. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...."[6]

The Social Security Administration has established a five-step sequential evaluation process for determining whether a claimant is disabled,[7] and the ALJ in this case followed the five-step process. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[8] Step one determines whether the claimant is presently engaged in substantial gainful activity.[9] If she is, disability benefits are denied.[10] If she is not, the decision maker must proceed to the second step.[11] Here, the ALJ determined that plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step.

The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments."[12] This determination is governed by certain "severity regulations," is based on medical factors alone, and consequently, does not include consideration of such vocational factors as age, education, and work experience.[13] Pursuant to the severi-

ty regulations, the claimant must make a threshold showing that her medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities.[14] If the claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits.[15] If, on the other hand, the claimant presents medical evidence and makes the de minimis showing of medical severity, the decision maker proceeds to step three.[16] The ALJ in this case concluded that plaintiff's degenerative disc disease and lumbar spine and knee arthralgias satisfied the severity requirement and, thus, the ALJ proceeded to step three.

In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."[17] If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits.[18] If not, the evaluation proceeds to the fourth step, where the claimant must show that the "impairment prevents [the claimant] from performing work he has performed in the past."[19] If the claimant is able to perform

**6.** *Id.* (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. III 1985)).

**7.** *See id.* (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

**8.** *Id.*

**9.** *Id.*

**10.** *Id.*

**11.** *Id.*

**12.** *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987)).

**13.** *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986)).

**14.** *Id.* at 750–51 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986)).

**15.** *Id.* at 751.

**16.** *Id.*

**17.** *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986); *Bowen v. Yuckert*, 107 S.Ct. at 2291).

**18.** *Id.*

**19.** *Id.* (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986); *Bowen v. Yuckert*, 107 S.Ct. at 2291).

her previous work, she is not disabled.[20] With respect to the third step of the process in this case, the ALJ determined that plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations. At the fourth step, the ALJ concluded that plaintiff was unable to perform past relevant work.

Thus, the ALJ proceeded to the fifth and final step of the sequential evaluation process-determining whether the claimant has the residual functional capacity (RFC) "to perform other work in the national economy in view of [her] age, education, and work experience." [21] At that point, the ALJ properly shifted the burden of proof to defendant to establish that plaintiff retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy." [22] At this step, the ALJ concluded that plaintiff was not disabled, a conclusion that rested on a finding that plaintiff, despite possessing certain non-exertional limitations, nonetheless could perform a significant number of jobs in the state and national economies, including electronic tester, order clerk, final assembler, and information clerk.

## IV. Analysis of Plaintiff's Specific Arguments

In her motion, plaintiff contends that the ALJ made two errors in reaching his decision: defendant erred in finding plaintiff's testimony not credible and failed to properly assess plaintiff's RFC. The Court addresses each of these arguments in turn.

### A. Assessment of Plaintiff's Credibility

Plaintiff asserts that the ALJ committed error by failing to assess properly her credibility in accordance with the Tenth Circuit's opinion in *Luna v. Bowen*.[23] Under *Luna*, the ALJ must apply a three part test. First, the ALJ must determine whether plaintiff has a pain producing impairment; secondly the ALJ must determine whether there is a loose nexus between the pain alleged and the impairment.[24] Thirdly, the ALJ must determine whether a claimant's subjective complaints are credible, considering the objective medical evidence and such factors as: a claimant's persistent attempts to find relief and her willingness to try any treatment prescribed; whether claimant has regular contact with a doctor; claimant's daily activities; claimant's regular use of crutches or a cane; and the dosage, effectiveness, and side effects of medication.[25] Moreover, the ALJ must give specific reasons for rejecting a claimant's subjective complaints.[26] Ultimately, credibility determinations "are peculiarly the province of the finder of fact," and should not be upset if supported by substantial evidence.[27]

A review of the ALJ's decision in this case reveals that he complied with *Luna* in assessing plaintiff's credibility. Plaintiff argues that the ALJ did not make a finding regarding a nexus between the pain alleged and plaintiff's impairment. However, the ALJ presumably found a loose nexus, because he went on to the

20. *Id.*

21. *See id.* (quoting *Bowen v. Yuckert,* 107 S.Ct. at 2291).

22. *See id.* (citations omitted); *accord White,* 271 F.3d at 1258 (at fifth step, burden of proof shifts to Commissioner to show that claimant retains the functional capacity to do specific jobs).

23. 834 F.2d 161 (10th Cir.1987).

24. *Luna,* 834 F.2d at 164.

25. *Barnett v. Apfel,* 231 F.3d 687, 690 (10th Cir.2000) (citing *Luna,* 834 F.2d at 165–66).

26. *White,* 271 F.3d at 1261 (citing *Kepler v. Chater,* 68 F.3d 387, 390–91 (10th Cir.1995)).

27. *Id.* (citing *Kepler,* 68 F.3d at 390–91).

third step and analyzed the evidence to determine whether plaintiff's complaints of disabling pain were credible when compared to her impairment. The ALJ considered plaintiff's work history and treatment history, and further considered that some of plaintiff's activities were inconsistent with her claim of disability. Although the ALJ did not make a finding regarding each of the *Luna* factors, his credibility determination may nevertheless be upheld as long as he links his findings to substantial evidence in the record.[28] The ALJ linked his findings to substantial evidence in the record. And plaintiff has not shown how the ALJ's credibility assessment was in error.

■ The ALJ also incorporated by reference the first ALJ's opinion. The first ALJ considered the fact that plaintiff had not required surgery or hospitalization, did not require extensive use of an assistive device such as a cane, had not received any work limitations from her doctors, and had declined physical therapy. This credibility analysis will be considered along with the credibility analysis the second ALJ provided. The case was originally remanded only for an error at step five in order for a VE to testify about what specific jobs in the national economy plaintiff could perform, and not for any defect in the credibility analysis. Also, because plaintiff was only insured through December 31, 1996, there was no new evidence on which the second ALJ could rely. Therefore, it was proper for the ALJ in this decision to incorporate the first ALJ's credibility analysis.

■ A claimant's daily activities may be considered in determining whether she is able to engage in substantial gainful employment.[29] The ALJ relied on medical records that recorded what plaintiff told her treating physicians about her activities during the course of her treatment. Plaintiff argues that the ALJ improperly relied on the activities he noted from plaintiff's medical records. Although plaintiff correctly states that daily activities must be considered based on their duration and frequency,[30] the evidence the ALJ relied on was sufficient to find plaintiff's activities inconsistent with disability.

In March 1996, plaintiff saw Dr. Ferguson for knee pain caused by twisting her knee while working in her barn. The report noted that plaintiff had first injured the knee in September 1995 after being butted by a horse. On April 9, 1996, plaintiff complained to Dr. Ferguson of back pain caused by moving heavy bags of feed. On May 16, 1996, plaintiff received a prescription for bug bites she had received after mowing her lawn. In September 1996 plaintiff asked Dr. Ferguson for Daypro, an anti-inflammatory medication, because she was in pain after having slept on a foam mattress in a camper while on vacation. And in October 1996 plaintiff requested pain medication from Dr. Ferguson because she had been "overdoing it," was lifting heavy items, and was about to take an 8–hour trip to Iowa. While it is true that the medical records do not indicate how often or for how long plaintiff continued these activities, when considered cumulatively, plaintiff's activities are inconsistent with plaintiff's claim of total disability.

The first ALJ also noted in his credibility determination that plaintiff: continued to keep and care for horses; visited with friends and relatives; attended movies twice a month; and testified that she was able to drive. Although plaintiff contends

---

**28.** *Winfrey v. Chater,* 92 F.3d 1017, 1020 (10th Cir.1996) (quoting *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir.1988)).

**29.** *Talbot v. Heckler,* 814 F.2d 1456, 1462 (10th Cir.1987).

**30.** *Id.*

that she was still limited in these activities, the ALJ properly considered the totality of the evidence in determining that plaintiff's daily activities were inconsistent with her alleged disability.

■ The ALJ also considered that plaintiff's records show she had worked on and off since 1965. It appears that plaintiff had no earnings in 1980. In other years she had some earnings, but in many years her earnings were minimal. These low earnings show that plaintiff was not engaged in substantial work activity during many of her working years. Poor work history is an appropriate consideration relevant to a claimant's credibility.[31] It was proper for the ALJ to determine that plaintiff's unsteady work history was evidence of a possible lack of work motivation, weighing against her credibility.

The ALJ also found plaintiff not credible because she did not try any alternative methods of treatment other than physical therapy and maintenance exercises, and as the first ALJ found, plaintiff had had no surgery or hospitalization for her impairment. Plaintiff argues that the ALJ relied on a lack of treatment in this factor, without employing the requisite four part test in *Frey v. Bowen*.[32] The *Frey* test requires, among other things, that the ALJ determine whether the treatment at issue would restore plaintiff's ability to work.[33] The test is used both in denying benefits for plaintiff's failure to follow prescribed treatment and for considering plaintiff's failure to follow prescribed treatment in evaluating plaintiff's credibility.[34]

But the Tenth Circuit has held that the *Frey* test is not required in a situation such as this, when the treatment has not been prescribed and the ALJ is simply considering "what attempts plaintiff made to relieve [her] pain ... in an effort to evaluate the veracity of plaintiff's contention that [her] pain was so severe as to be disabling."[35] Here the ALJ was not concerned with plaintiff's failure to follow prescribed treatment, but with the fact that plaintiff's pain was not as severe as she claimed because she only received minimal and conservative treatment during the pertinent time period. This is a factor that an ALJ may rely on when deciding whether a plaintiff's complaints are credible.[36] The ALJ did not need to employ the *Frey* analysis in this case.

The first ALJ also relied on the fact that plaintiff had not required prolonged use of an assistive device for her impairments. But at plaintiff's second hearing, she testified that she had used crutches in 1996 when her hip was hurting her. Although there is no evidence of how long plaintiff was required to use crutches, the second ALJ nevertheless noted that plaintiff had used crutches, a factor that weighed in favor of plaintiff's credibility. But, given the many factors that weighed against plaintiff's credibility, the ALJ's credibility determination was not in error.

31. *Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir.1995); *Yeates v. Barnhart*, 187 F.Supp.2d 1318, 1333 (D.Kan.2002).

32. 816 F.2d 508, 517 (10th Cir.1987).

33. *Id.*

34. *See Goodwin v. Barnhart*, 195 F.Supp.2d 1293, 1295 (D.Kan.2002) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *Ragland v. Shalala*, 992 F.2d 1056, 1059–60 (10th Cir.1993)).

35. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir.2000) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991); *Luna v. Bowen*, 834 F.2d 161, 165–66 (10th Cir.1987)) (see also *Allen v. Apfel*, No. 99–3249, 2000 WL 796081 (10th Cir. June 21, 2000); *Noble v. Callahan*, 978 F.Supp. 980, 986 (D.Kan. 1997); *Bates v. Barnhart*, 222 F.Supp.2d 1252, 1261 (D.Kan.2002)).

36. *See Wiley v. Chater*, 967 F.Supp. 446, 451 (D.Kan.1997); *Dellinger v. Barnhart*, 298 F.Supp.2d 1130, 1137 (D.Kan.2003).

In short, the ALJ considered the entire record, set forth the specific evidence he relied upon, applied the correct legal standards in evaluating plaintiff's testimony, and based his determination on substantial evidence in the record as required. Because credibility determinations are ultimately left to the ALJ when he has substantial evidence for his determination, the Court finds that the ALJ's decision regarding plaintiff's credibility is not erroneous.

*B. RFC Determination*

 Plaintiff also argues that the ALJ improperly determined her RFC, because there were no physicians' opinions in the record linking plaintiff's impairments to RFC criteria such as lifting, sitting, and standing. Plaintiff urges that the ALJ should be required to rely on a medical expert to determine how plaintiff's impairments translate into residual functional capabilities. Absent such an expert, the ALJ's RFC determination is but a lay person's interpretation of medical evidence, which plaintiff argues is not allowed.

Plaintiff admits that there is no Tenth Circuit case law requiring such specific action by the ALJ. Plaintiff cites case law from other circuits holding that an ALJ cannot determine RFC limitations, when the determination is based solely on bare findings by physicians, without the advice of an expert.[37] But, these cases also state that without an expert, an ALJ may nevertheless rely on evidence in the record, evaluate the evidence and determine how the evidence relates to the claimant's RFC limitations, if a lay person would be capable of evaluating such evidence and determining how that evidence would relate to plaintiff's RFC limitations.[38] Otherwise the ALJ must have a medical opinion on which to base his RFC findings.[39]

The Tenth Circuit similarly requires the ALJ to link his RFC determination to substantial evidence in the record. There are no Tenth Circuit cases that address this issue of determining RFC without any expert medical opinions regarding the claimant's RFC. However, in the *Lamb* case, the Tenth Circuit remanded for lack of substantial evidence, where the record consisted of: two RFC assessment forms filled out by non-examining agency physicians; no accompanying thorough written reports or persuasive testimony; and where the ALJ also had not given any weight to the treating physician's RFC assessment form.[40] In remanding, the court stated:

> [E]ven if the ALJ determines on remand that he is not required to give controlling weight to the opinions of [plaintiff's treating physician], the ALJ cannot then simply conclude . . . that [plaintiff] is therefore capable of performing light work. Instead, the ALJ must evaluate and make specific findings as to [plaintiff's] physical RFC, and the findings must be supported by substantial evidence."[41]

**37.** *Rosado v. Sec'y of Health & Human Servs.,* 807 F.2d 292, 293 (1st Cir.1986); *Porzondek v. Sec'y of Health & Human Servs.,* No. 92–1333, 1993 WL 15135, *2 (6th Cir. Jan.22, 1993); *Bauzo v. Bowen,* 803 F.2d 917, 926 (7th Cir.1986); *Frankl v. Shalala,* 47 F.3d 935, 938 (8th Cir.1995).

**38.** *Id; Gordils v. Sec'y of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir.1990).

**39.** *Id.*

**40.** *Lamb v. Barnhart,* No. 03–7024, 2003 WL 22925280, *5 (10th Cir. Dec.11, 2003). Pursuant to 10th Cir. Rule 36.3(B)(1), the court cites this unpublished opinion for its persuasive value.

**41.** *Id.* (internal citations omitted).

This language suggests that the Tenth Circuit requires that the ALJ link his RFC finding to substantial evidence in the record, even when lacking a treating physician's opinion.

In this case, the record does not include any opinions of treating physicians regarding how plaintiff's limitations affected her RFC. There was one RFC assessment dated February 25, 1998, in which the assessor stated that there was insufficient evidence in the file to establish the RFC prior to December 31, 1996. Nor did the ALJ link his findings regarding the RFC to substantial evidence in the record.

The ALJ found that plaintiff had the ability to lift a maximum of 10 pounds, but the only evidence he cited to was plaintiff's contention that she could lift five pounds. The ALJ found that plaintiff could stand one hour continuously for up to 4 hours in an 8 hour day, could sit for one hour continuously for a total of less than 6 hours in an 8 hour day, and needed a sit/stand option at work. But the only evidence he cited regarding plaintiff's ability to sit and stand was her testimony that she had a hard time sitting for 30 minutes, she could stand for 10–15 minutes, and she could walk one block. Similarly the ALJ's findings that plaintiff could not kneel, squat, crawl, bend to the floor, climb ladders, rope, or scaffolding were findings based on plaintiff's testimony.

Even though the ALJ properly determined that plaintiff's testimony was not fully credible regarding her alleged limitations, the ALJ must still support his RFC determination with credible evidence from the record. His failure to do so is grounds for reversal. On remand the ALJ should reconsider plaintiff's RFC in light of the record. The ALJ either needs to find evidence in the record to support his RFC determination, or he should obtain opinions from medical experts who can link plaintiff's impairments during the pertinent time period to her RFC capabilities.

Because the ALJ must reevaluate plaintiff's RFC, he must then reevaluate whether plaintiff can still perform substantial work in the national economy given the reassessed RFC. If he finds plaintiff has some nonexertional limitations, he must have a Vocational Expert testify as to what jobs plaintiff remains capable of performing.

## V. Conclusion

Therefore, the Court finds that this action should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to conduct further proceedings as follows:

Upon receiving the court's final order of remand, the Appeals Council of the Social Security Administration will remand this case and direct the ALJ to reassess the severity of plaintiff's impairments, in accordance with the statute and regulations, including the evaluation of plaintiff's RFC. The ALJ will further consider how the evidence in the record relates to plaintiff's RFC criteria. The ALJ will state specific evidence relied on for his resultant findings. If necessary, the ALJ will obtain an expert medical opinion(s) relating plaintiff's impairments during the pertinent time period to RFC limitations. The ALJ will reassess plaintiff's ability to perform a significant amount of jobs in the national economy based on plaintiff's RFC.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's decision denying plaintiff disability benefits is **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g)

for further proceedings in accordance with this Memorandum and Order.

**IT IS SO ORDERED.**