Marilyn BROWN, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.

No. 04–2335–GTV.

United States District Court, D. Kansas.

March 24, 2005.

Ross E. Stubblefield, Blue Springs, MO, for Plaintiff.

Christopher Allman, Office of United States Attorney, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff Marilyn Brown brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and D. Kan. Rule 83.7, seeking judicial review of the decision of the Commissioner of Social Security ("Commission-er") to deny her applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. Plaintiff claims that she is impaired by breast cancer and the residuals of a radical right mastectomy. She also has mild degenerative joint disease in the lumbar spine with myofascial pain syndrome and a history of uterine bleeding. She has an eleventh grade education and her past work experience includes employment as a cashier, home health aide, and a babysitter.

This appeal focuses on the Commissioner's determination that Plaintiff's impairments were not disabling. Plaintiff contends that the Commissioner made the following errors: (1) failed to properly credit the treating physicians' opinions; (2) failed to explain her decision at Step Three; (3) failed to link her residual functional capacity assessment to evidence; (4) improperly rejected a medical source statement; and (5) did not make a thorough credibility assessment. For the reasons set forth below, the court remands the case for further analysis by the Commissioner.

## I. Procedural Background

On December 20, 2000, Plaintiff filed an application for supplemental security income benefits, and on January 2, 2001, she filed an application for a period of disability and disability insurance benefits, alleging that she became disabled on November 24, 2000. The applications were denied both initially and upon reconsideration. At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on November 12, 2002, at which Plaintiff and her counsel were present. On June 27, 2003, the ALJ rendered a decision in which she determined that Plaintiff was not under a "disability" as defined by the Social Security Act. After the ALJ's unfa-

vorable decision, Plaintiff requested review by the Appeals Council. The Appeals Council denied Plaintiff's request for review on May 19, 2004, rendering the ALJ's decision the final decision of the Commissioner.

## II. Standard of Review

■ The Commissioner's findings are binding on this court if supported by substantial evidence. 42 U.S.C. § 405(g); *Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir.1987). The court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the Commissioner properly applied relevant legal standards. *Marshall v. Chater*, 75 F.3d 1421, 1425 (10th Cir.1996) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano*, 26 F.3d at 1028 (citations and internal quotation marks omitted). The court may not reweigh the evidence or substitute its judgment for that of the ALJ or the Commissioner. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir.1992).

## III. The ALJ's Findings

1. Claimant met the special earnings requirement of the Act on November 24, 2000, the date she stated she became unable to work, and continues to do so through the date of this decision.

2. Claimant has not engaged in substantial gainful activity at any time since November 24, 2000, but did engage in babysitting jobs at less than substantial gainful activity level wages working 25 hours a week between May 2001 and December 2001.

3. Medical evidence establishes that claimant is status post right mastectomy in December 2000 with subsequent chemotherapy treatment until March 29, 2001 without recurrence of any cancer; has mild degenerative joint disease in the lumbar spine with myofascial pain syndrome; a history of uterine bleeding problems and weight disproportionate to height at 5'4" and weight in excess of 200 pounds, but she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. Claimant's testimony as to the severity of her impairments and attending symptoms is found to be no more than partially credible inasmuch as such testimony is inconsistent with her work history, the objective medical evidence, including multiple medical findings, the lack of any recurrence of the cancer, the lack of underlying pathology to support her complaints of extreme pain, lack of consistent treatment for back pain, and for the other reasons fully set forth in the Rationale section of this decision.

5. Claimant has at all times retained a residual functional capacity for essentially a full range of light and sedentary work with lifting of no more than 20 pounds maximum on an occasional basis.

6. Claimant's past relevant work as a cashier as that job is generally performed in the economy is not prevented by claimant's impairments, symptoms and resulting residual functional capacity.

7. Claimant was not under a "disability" as defined in the Social Security Act, as amended, at any time through the date of this decision.

## IV. Discussion

A five-step process is employed to determine whether a Social Security claimant is disabled:

Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. [20 C.F.R.] §§ 404.1520(b), 416.920(b). If he is not, the decisionmaker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments.... §§ 404.1520(c), 416.920(c).... If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, App. 1 (1986). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. §§ 404.1520(e), 416.920(e). If the claimant cannot perform this work, the fifth and final step of the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. §§ 404.1520(f), 416.920(f).

Bowen v. Yuckert, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

In this case, the recurrent problem with the ALJ's opinion is her failure to properly apply the relevant legal standards. Her ultimate conclusion may be supported by substantial evidence in the record, but this court is not in a position to review that conclusion if the ALJ has failed to fully explain her rationale as the law requires.

### A. Treating Physicians' Opinions

■ Plaintiff first claims that the ALJ failed to give controlling weight to the opinions of Plaintiff's treating physicians. None of Plaintiff's treating physicians opined that Plaintiff was disabled, but Dr. Mark Basham did state that Plaintiff had "developed a history of persistent low back pain that makes it difficult for her to work. She frequently has uncontrolled pain that makes it difficult for her to stand in the same position for more than five minutes. She has difficulty walking even short distances due to her pain." The ALJ considered the statements of Dr. Basham, and found them to be conclusory and less than persuasive. She failed, however, to consider the treatment records of Drs. Mike McClintick and Jung G. Suh. The court concludes that the failure to consider the additional treatment records constitutes error requiring reversal.

■ "A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." Walker v. Apfel, No. 97–1189–MLB, 1998 WL 928672, at *4 (D.Kan. Sept.18, 1998) (citing Castellano, 26 F.3d at 1029). If a treating physician's opinion is inconsistent with other evidence, the ALJ must determine whether the other

evidence outweighs the treating physician's opinion. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995). In weighing any medical opinion, the ALJ must consider the following factors: (1) the "length of the treatment relationship and the frequency of examination"; (2) the "nature and extent of the treatment relationship"; (3) the amount of relevant evidence supporting the physician's opinion; (4) how consistent that opinion is with the rest of the record; (5) whether the physician is a specialist; and (6) other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6). The ALJ cannot disregard a treating physician's opinion that a claimant is disabled without giving legitimate and specific reasons. *Goatcher*, 52 F.3d at 290 (citing *Frey*, 816 F.2d at 513). But the ultimate responsibility for determining whether a claimant is disabled is reserved for the ALJ, not the treating physician. *Castellano*, 26 F.3d at 1029 (citations omitted).

In this case, the issue is not whether the ALJ improperly disregarded a treating physician's opinion that Plaintiff is disabled, although Dr. Basham did opine that it would be "difficult" for Plaintiff to work. Instead, it is whether the ALJ sufficiently discussed the medical evidence of record and its consistency with Plaintiff's complaints of disabling pain. The court notes that twice, the ALJ made statements that misrepresented the record. One of the reasons the ALJ gave for discrediting Dr. Basham's opinion is that his most recent treatment note is dated October 24, 2001, over a year before Dr. Basham opined that Plaintiff would have difficulty working. But the ALJ apparently overlooked Plaintiff's treatment records from the Greenwood County Hospital, where Dr. Basham saw Plaintiff on July 12, 2002 for abdominal and back pain. Plaintiff was also seen by Dr. McClintick, another doctor em-

ployed at the same clinic as Dr. Basham, on August 11, 2002 for low back pain.

The ALJ also cited one x-ray dated August 11, 2002 as being inconsistent with Dr. Basham's opinion. Although the "conclusion" portion of the radiologist's statement notes the "essentially normal" and "mild" condition of Plaintiff's lumbosacral spine, the x-ray also revealed sclerosis of the minor joints from L4 through S1.

But the most troubling aspect of the ALJ's discussion of the treating physicians' opinions is the fact that she failed to review or evaluate the medical records from Dr. McClintick, Dr. Suh, and other treating physicians at the Wichita Clinic and Greenwood County Hospital. While none of the physicians opined that Plaintiff was disabled, their records are useful in determining whether Plaintiff had an impairment that could reasonably be expected to produce the pain alleged by Plaintiff. The records of Drs. McClintick and Suh may support a finding that Plaintiff's cancer, while without recurrence, continued to affect her ability to function without pain. The court concludes that the case should be remanded for further analysis by the ALJ regarding the treatment records of Plaintiff's treating physicians.

### B. Error at Step Three

■ Plaintiff also argues that the ALJ erred at Step Three because she failed to identify the relevant listed impairment(s) before concluding in summary fashion that Plaintiff did not meet any listed impairment(s). The court agrees.

The ALJ should have identified the relevant listed impairment(s) and compared Plaintiff's alleged impairments to it. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996) ("[T]he ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing

or Listings.... Such a bare conclusion is beyond meaningful judicial review."); *Bolan v. Barnhart*, 212 F.Supp.2d 1248, 1258 (D.Kan.2002) (citing *Clifton*, 79 F.3d at 1009). "[T]he step three analysis requires a comparison of medical evidence regarding symptoms, signs, and laboratory findings with the listed impairment sought to be established or the listed impairment most similar to the claimant's." *Larson v. Chater*, No. 95–2194, 1996 WL 709848, at *1 (10th Cir. Dec.10, 1996). Absent reference to a specific listing or a comparison of the evidence to that listing, the court is unable to meaningfully review the ALJ's decision. *Bolan*, 212 F.Supp.2d at 1258 (citing *Clifton*, 79 F.3d at 1009).

The court is unable to determine whether the ALJ properly applied the relevant legal standards in her Step Three analysis. Failure to provide the court with an adequate basis for reviewing application of the relevant legal standards is grounds for reversal. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994). The Commissioner's decision is reversed and remanded for the purpose of allowing the ALJ to fully explain her findings at Step Three.

## C. Failure to Link RFC Determination with Specific Evidence

▆ Plaintiff next claims that the ALJ failed to link her residual functional capacity ("RFC") assessment to specific evidence in the record. The court agrees, and remands for the ALJ to explain the evidence supporting her RFC findings.

▆ A plaintiff's RFC is what he or she can do despite his or her limitations. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993) (citations omitted). The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision. Failure to link the RFC determination to specific evidence constitutes reversible error. *Bill-*

*ups v. Barnhart*, 322 F.Supp.2d 1220, 1228 (D.Kan.2004). Social Security Ruling 96–8p provides guidance on what the RFC should include:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. A failure to first make a function-by-function assessment of the claimant's limitations or restrictions could result in the adjudicator overlooking some of the claimant's limitations or restrictions.

Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7 (July 2, 1996).

Here, the ALJ did not cite any medical evidence to document her RFC evaluation. The court cannot conduct a meaningful review of the ALJ's findings absent a discussion of the evidence.

The Commissioner argues that the entire discussion leading up to the ALJ's RFC assessment represents a proper RFC discussion. But the ALJ still did not explain from where she derived the limitations she posed to the vocational expert. The court determines that the case should be remanded for the ALJ to explain her RFC evaluation in accordance with the relevant legal principles.

### D. Rejection of Medical Source Statement

■ Plaintiff's next argument is that the ALJ improperly rejected the statements of Nancy J. McKenzie, PA–C, who the ALJ incorrectly labeled a "nurse practitioner." Ms. McKenzie completed a form significantly limiting the activities that Plaintiff could engage in, and signed it "Nancy J. McKenzie PA–C for Mark A. Basham M.D."

Regardless of Ms. McKenzie's title, she is an "other source," rather than an "acceptable medical source." *See* 20 C.F.R. § 404.1513. As such, the ALJ *may* use evidence from her, but is not obligated to do so. The court is somewhat troubled, however, by the fact that she signed the form "for Mark A. Basham M.D.," who is an "acceptable medical source." If Ms. McKenzie was indeed signing for Dr. Basham, a treating physician, then the ALJ should have given more consideration to the conclusions.

Although the ALJ explained that she was rejecting Ms. McKenzie's statements because they were not supported by reference to any objective test results or findings and because they were inconsistent with the medical evidence of record, her succinct explanation is inadequate if Ms. McKenzie was acting as an agent for Dr. Basham in signing the form. On remand, the ALJ should determine in what capacity Ms. McKenzie was acting. If she determines that Ms. McKenzie was merely signing the form for Dr. Basham, the ALJ should follow the legal standards for evaluating a treating physician's opinion.

### E. Credibility Determination

■ Finally, Plaintiff argues that the ALJ failed to follow the appropriate guidelines for making a credibility determination. The court agrees.

■ Because the ALJ is " 'optimally positioned to observe and assess witness credibility,' " *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir.1991)), the court "may overturn such a credibility determination only when there is a conspicuous absence of credible evidence to support it," *Patterson v. Apfel,* 62 F.Supp.2d 1212, 1217 (D.Kan.1999) (citing *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992)). Credibility determinations made by the ALJ are generally treated as binding upon review. *See Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990).

■ When evaluating the credibility of a claimant's complaints of disabling pain, the ALJ should ask the following questions: "(1) whether [the] [c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and [the] [c]laimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the] [c]laimant's pain is in fact disabling." *Musgrave v. Sullivan,* 966 F.2d 1371, 1376 (10th Cir. 1992) (citing *Luna v. Bowen,* 834 F.2d 161, 163–64 (10th Cir.1987)). In deciding whether the claimant's pain is disabling, the ALJ should consider the following factors:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

The ALJ partially discredited Plaintiff's statements because she believed that Plaintiff was not taking the medication hydrocodone. But the record indicates that Plaintiff was, in fact, prescribed Lortab, a hydrocodone. The ALJ also discredited Plaintiff's statements because she noted that there was a lack of consistent treatment for back pain. Several courts have sustained an ALJ's credibility findings when a claimant alleged disabling pain, yet failed to procure medical care. *See e.g., Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 477 (6th Cir. 1988) ("In spite of the life-threatening nature of his condition, the claimant admits he has not followed the instructions of his physician to wear support hose: '[y]ou're looking at roughly close to a hundred dollars,' he testified, and '[a] pair of those support hose lasts approximately two to three months.' The claimant has found it possible to buy two packs of cigarettes a day, however."); *McKenney v. Apfel*, 38 F.Supp.2d 1249, 1256 (D.Kan.1999) ("McKenney did not fill the prescriptions, claiming he did not have the funds to do so. There is no indication McKenney ever tried to apply for aid in order to obtain these prescriptions."); *Jacobs v. Chater*, 956 F.Supp. 1560, 1568 (D.Colo.1997) ("[I]nability to pay for treatment does not necessarily preclude an ALJ from considering the failure to seek medical attention in credibility determinations, especially where the claimant could apparently afford beer and cigarettes.").

Here, however, the ALJ failed to acknowledge much of Plaintiff's treatment at Greenwood County Hospital, and also failed to consider the evidence that Plaintiff had trouble affording to go to the doctor's office. While inability to pay for services does not automatically weigh in favor of Plaintiff, as the cases cited above show, it is a factor that should have been discussed by the ALJ.

The ALJ also made two arguably inconsistent statements with respect to Plaintiff's work history: She stated that "[c]laimant's marginal work history neither strongly supports nor strongly detracts from her claim...." Elsewhere, she observed that "claimant has a rather sporadic work record and did work beyond her alleged onset date of disability, which tends to demonstrate her ability to work," and made a finding of fact that "[c]laimant's testimony as to the severity of her impairments and attending symptoms is found to be no more than partially credible inasmuch as such testimony is inconsistent with her work history...." While these statements are not enough, in and of themselves, to warrant reversal and remand, the court determines that they should be reconciled when the ALJ takes a second look at this case.

The court concludes that on remand, the ALJ should provide more thorough and consistent analysis for her credibility findings.

IT IS, THEREFORE, BY THE COURT ORDERED that the decision of the Commissioner is remanded for further proceedings in accordance with this Memorandum and Order.

Copies or notice of this order shall be transmitted to counsel of record.

The case is closed.

**IT IS SO ORDERED.**